**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail:  ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
888 Seventh Avenue
New York, NY  10019
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
E-Mail: scott@bursor.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK ROBERTS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ASSURANCE IQ, INC. and MICHAEL ROWELL,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

Plaintiff Patrick Roberts ("Plaintiff"), individually and on behalf of all others similarly situated, allege the following upon information and belief, except that Plaintiff's allegations as to his own actions are based on personal knowledge.

## NATURE OF THE ACTION

1.  Plaintiff brings this action against Defendants to stop their practice of sending unsolicited text messages to consumers.  In particular, Defendants text cellular telephones using an automatic telephone dialing system in order to deliver telemarketing messages without prior express written express consent in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").  Accordingly, Plaintiff seeks damages and injunctive relief for himself and all other similarly situated.

2.  Defendants engaged in telemarketing/advertising, directly and/or through their authorized agents acting on Defendants' behalf, by text messaging cellular telephone numbers throughout the United States, using both an automatic telephone dialing system to deliver a message or short message service (otherwise known as "text messaging" or a "text message") without the prior express written consent of the receiving party.

## PARTIES

3.  Plaintiff Patrick Roberts is, and at all times mentioned herein was, a resident of Vallejo, California and a citizen of the State of California.

4.  Defendant Assurance IQ, Inc. is a Florida corporation with its principal place of business located at 11400 SE 8th Street, Bellevue, Washington 98004.

5.  Defendant Michael Rowell is the owner, President and Director of Assurance IQ, Inc.  Mr. Rowell, during all times relevant to Plaintiff's claims, specifically, individually, and personally directed and authorized all of the unlawful text messages described herein, and was intimately involved in the program to send these text messages, including the selection of the equipment used to send them.  Mr. Rowell was the guiding spirit and central figure behind these unlawful text messages being made in the matter they were.

**JURISDICTION AND VENUE**

6. For the reasons stated in in *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012), the Court has federal subject matter jurisdiction under 47 U.S.C. § 227.  This Court also has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2 Stat. 4 ("CAFA"), which, *inter alia*, amends 28 U.S.C. § 1332, at new subsection (d), conferring federal jurisdiction over class actions where, as here: (a) there are 100 or more members in the Class members; (b) some members of the Class members have a different citizenship from Defendant; and (c) the claims of the Class members exceed the sum or value of five million dollars ($5,000,000) in aggregate.  *See* 28 U.S.C. § 1332(d)(2) and (6).

7. This Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves violations of a federal statute, the Telephone Consumer Protection Act.

8. Venue is proper in this Court under 28 U.S.C. § 1391 because Defendant transacts significant business within this District and a substantial part of the events giving rise to Plaintiff's claims took place within this District.

**FACTS COMMON TO ALL CAUSES OF ACTION**

**A.   The Telephone Consumer Protection Act of 1991**

9. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.  Congress intended to provide consumers a choice how telemarketers may contact them, finding that "[e]vidence presented to Congress indicates that automated or prerecorded calls are a nuisance. . . ." Pub. L. No. 102-243, §12-13 (1991).  "Voluminous consumer complaints about abuses of telephone technology—for example, computerized calls dispatched to private homes—prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 744 (2012).

10. Among other things, the TCPA prohibits "initiating any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party. . . .".  According to findings by the Federal

Communications Commission ("FCC"), such calls are prohibited because prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls are costly and inconvenient. The FCC has stated that telemarketing occurs when a call is initiated and transmitted to a person for the purpose of promoting property, goods, or services. 47 C.F.R. §64.1200(a)(2)(iii); 47 C.F.R. §64.1200(f)(12); 18 FCC Rcd. 14014, 14098 ¶141 (FCC 2003).

11.     The FCC has issued rulings clarifying that in order to obtain an individual's consent, a clear, unambiguous, and conspicuous written disclosure must be provided by the individual. 2012 FCC Order, 27 FCC Rcd. at 1839 ("[r]equiring prior written consent will better protect consumer privacy because such consent requires conspicuous action by the consumer—providing permission in writing—to authorize autodialed or prerecorded telemarketing calls. . . .").

12.     According to 47 U.S.C. §227(a)(1), the ban on telephone calls made by using an automatic telephone dialing system ("ATDS") extends to unsolicited autodialed text messages sent to cellular phones. *Gager v. Dell Fin. Servs., Inc.*, 727 F.3d 265, 269 n.2 (7th Cir. 2013); FCC Declaratory Ruling, 27 F.C.C.R. 15391, 2012 WL 5986338 (Nov. 29, 2012). The Federal Communications Commission has declared that unsolicited text messages are "[a]nnoying and time-consuming," as well as "[i]ntrusive and costly." FCC Guide, Spam: Unwanted Text Messages and Email, http://www.fcc.gov/guides/spam-unwanted-text-messages-and-email. Pursuant to 47 U.S.C. §227(b)(1)(A)(iii), it is illegal for Defendants to send unsolicited text messages to its users without their prior consent.

**B.     Defendants' Text Messages To Plaintiff**

13.     On or about January 7, 2018, Defendants, using the phone number (480) 571-2544, texted Plaintiff's cellular phone at (707) *** - **** with an unsolicited non-emergency text message. Plaintiff received strikingly similar text messages from phone number 541-615-9153 on June 22, 2017, from (951) 338-3455 on September 7, 2017, and from (213) 401-4137 on November 18, 2017.

14.     Defendants sent these text messages in order to promote, market, and to otherwise advertise their products and services.

15. The January 7, 2018 text message contained just the following: "Melinda Deguzman tyshiwku.me/RV6U9r4NT." Plaintiff does not know anyone named Melinda Deguzman.

16. The hyperlink "tyshiwku.me/RV6U9r4NT" leads to a page on the website http://life.iaddurl.co, on which visitors are prompted to fill in contact information in order to receive a life insurance quote. If the user fills in his contact information and clicks on the "GET A QUOTE!" button, he is then redirected to a page on the domain nationalfamily.com. The logo on that website indicates that it is owned by Defendants:



The language at the bottom of nationalfamily.com likewise connects the webpage to Defendants: "Invitations for application for insurance on ASSURANCE.com are made through ASSURANCE IQ, INC or through its designated agent, Michael W. Rowell, only where licensed and appointed."

17. Prior to the text messages at issue in this action, Plaintiff never provided Defendants with prior express written consent to text him.

18. Given the size of Defendants' business, and the generic nature of the text messages that Plaintiff received, there is little doubt that Defendant sent similar or identical text messages to thousands of other consumers as well.

19. Defendants have caused actual concrete harm to Plaintiff and the Class members, because such individuals have been subjected to invasion of privacy, unwanted/intrusive text messages, have been required to pay cell phone service providers for unwanted text messages, lost use of their cell at the time of receiving the unwanted text message, wasted time on receipt of and reading of the unwanted text messages, and have been subjected to increased electricity charges from receipt of unwanted text messages.

## CLASS ACTION ALLEGATIONS

20. Plaintiff brings this action on behalf of himself and on behalf of all other persons similarly situated. Plaintiff proposes the following class ("Class"):

> All persons within the United States who received a text message from Defendants, or anyone acting on their behalf, to their cellular telephone, at any time from four years prior to the filing of this Complaint through the dissemination of class notice, where the text message was sent through the use of an automatic telephone dialing system.

21. Plaintiff does not know the exact number of members in the Class, but reasonably believes based on the scale of Defendants' business, and the number of unsolicited text messages that he received, that the class is so numerous that individual joinder would be impracticable.

22. Plaintiff and all members of the Class have been harmed by the acts of Defendants in the form of multiple involuntary telephone and electrical charges, the aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited and harassing text messages, the and violations of their statutory rights.

23. The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits. The Class members can be identified easily through records maintained by Defendants. There are well-defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact involving the class claims predominate over questions that may affect individual members of the Class members. Those common questions of law and fact include, but are not limited to, the following:

   a. Whether Defendants sent Plaintiff and Class members text messages;
   b. Whether Defendants conduct was knowing and/or willful;
   c. Whether the text messages that Defendants sent violate the TCPA;
   d. Whether Defendants sent non-emergency text messages to Plaintiff and the Class members;
   e. Whether Defendants and/or their agents used an automatic telephone dialing system to transmit the unsolicited text messages;
   f. Whether Defendants transmitted the unsolicited text messages to Plaintiff and Class

members without their prior express written consent;

g. Whether Defendants are liable for damages; and

h. Whether Defendants should be enjoined;

24. Plaintiff has retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes.

25. A class action is the superior method for the fair and efficient adjudication of this controversy.  Class wide relief is essential to compel Defendant to comply with the TCPA. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the members of the classes, by definition, did not provide the prior express consent required under the statute to authorize calls to their telephones.

26. As persons who received text messages on their telephone using an artificial or prerecorded voice, without their prior express written consent, and Plaintiff asserts claims that are typical of each member of the class.  Plaintiff will fairly and adequately represent and protect the interests of the Class members, and has no interests that are antagonistic to any member of the Class members.

27. Defendants have acted on grounds generally applicable to the Class members, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class members as a whole appropriate.  Moreover, he TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## FIRST COUNT
## TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, *et seq*.

28. Plaintiff incorporates by reference the foregoing paragraphs of this complaint as if fully stated herein.

29. Defendants utilized an ATDS to send unsolicited text message calls to Plaintiff and Class members' cell phone numbers.

30. Plaintiff and Class members did not provide Defendants with prior written consent to receive text messages from Defendants.  The foregoing acts and omissions of Defendants

CLASS ACTION COMPLAINT                                                                                                      6

constitute numerous and multiple knowing and/or willful violations of the TCPA.

31. As a result of Defendants' violations of the TCPA, Plaintiff and members of the classes are entitled to an award of $500.00 in statutory damages for each and every text message that they received from Defendants.

32. As a result of Defendants' knowing and/or willful violations of the TCPA, Plaintiff and members of the Class members are entitled to treble damages of up to $1,500.00 for each and every text message that they received from Defendants.

33. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by Defendants in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all members of the Class members the following relief against Defendants:

 a. Injunctive relief prohibiting such violations of the TCPA by Defendants in the future;
 b. As a result of Defendants' violations of the TCPA, Plaintiff seeks for himself and each member of the Class members $500.00 in statutory damages for each and every text message call that violated the TCPA;
 c. As a result of Defendants' willful and/or knowing violations of the TCPA, Plaintiff seeks for himself and each member of the Class members treble damages, as provided by statute, of up to $1,500.00 for each and every text message call that violated the TCPA;
 d. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing appropriate classes, finding that Plaintiff is a proper representative of the classes, and appointing the lawyers and law firm representing Plaintiff as counsel for the classes;
 e. Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: January 11, 2018  **BURSOR & FISHER, P.A.**

By: */s/ L. Timothy Fisher*
L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
E-Mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
888 Seventh Avenue
New York, NY 10019
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
E-Mail: scott@bursor.com

*Attorneys for Plaintiff*